UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:18-cr-00162-JLR |
| | ) | |
| vs. | ) | Seattle, WA |
| | ) | |
| HANY VELETANLIC, | ) | |
| | ) | In-Court Hearing |
| Defendant. | ) | November 11, 2019 |
| | ) | 2:00 p.m. |

---

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE JAMES L. ROBART
UNITED STATES DISTRICT JUDGE

---

APPEARANCES:

FOR THE PLAINTIFF: THOMAS M. WOODS
MATTHEW D. DIGGS
U.S. Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
thomas.woods2@usdoj.gov
CaseView.ECF@usdoj.gov

FOR THE DEFENDANT: CHARLES RICHARD VARNI
Law Offices of John Henry Browne
800 Norton Building
801 Second Avenue
Seattle, WA 98104
charlie@jhblawyer.com

Andrea Ramirez, CRR, RPR
Official Court Reporter
United States District Court
Western District of Washington
700 Stewart Street, Suite 17205
Seattle, WA 98101
andrea_ramirez@wawd.uscourts.gov
(206)370-8509

Reported by stenotype, transcribed by computer

THE CLERK: Number CR18-162, United States vs. Hany Veletanlic.

Counsel, please make your appearances for the record.

MR. WOODS: Good afternoon, Your Honor. Tom Woods and Matthew Diggs, on behalf of the United States.

THE COURT: Thank you.

MR. VARNI: And, Your Honor, good afternoon, Charlie Varni. I'm here with Mr. Veletanlic.

THE COURT: Thank you. Mr. Veletanlic.

Mr. Varni, I understand you have a matter you want to raise with the Court?

MR. VARNI: That's correct, Your Honor.

Your Honor, on behalf of my client, my client would like the Court to consider having us withdraw as counsel. Unfortunately, as we've worked with Mr. Veletanlic, our communications have essentially completely fallen apart, so much so, Your Honor, he does not feel that today we can properly represent him in this sentencing matter. I've had numerous discussions with Mr. Veletanlic. We've worked diligently together. But I have to agree with him, at this point, that communication has fallen apart.

Going forward, Your Honor, I also know that Mr. Veletanlic does not have a problem with continuing the sentencing. I'm sure the Court probably does.

THE COURT: Go ahead, sir. Finish.

MR. VARNI: I'm just making my representations as to what my client has discussed with our firm.

At this point, Your Honor, I do have to just renew our motion. I do know it was denied. But on behalf of my client and his intentions, and what he would like, that's essentially what we're asking the Court to consider.

THE COURT: Well, Counsel, on October 25, approximately two weeks ago --

MR. VARNI: Yes, Your Honor.

THE COURT: -- you filed a motion to withdraw as counsel --

MR. VARNI: That's correct.

THE COURT: -- and said, "It has become clear that Mr. Veletanlic can no longer afford to be represented by retained counsel." That would be you.

MR. VARNI: And part of that, Your Honor --

THE COURT: Let me read, sir. You can go ahead and sit down, because this is going to take me a while. "To be clear, Mr. Veletanlic has paid for my services in full. He will, however, no longer be able to continue to pay for Mr. Levy's fees." And then it says, "My office has spoken to Mr. Levy, and he is amenable to representing Mr. Veletanlic, going forward."

Motion to withdraw as counsel, based on not being able to pay your fees, you know, it also says in here that,

"Mr. Veletanlic unambiguously informed my office that he no longer wants us to represent him in this matter. The communications are strained."

Well, you know, I don't have a lawyer. I'm not going to appoint Mr. Levy. We would have to -- you'd have to have a notice of substitution or a notice of withdrawal and request for appointment of new counsel. You don't do any of that. Instead, you waltz in here and now announce, "Oh, we need to continue the sentencing."

There are very serious allegations being made against Mr. Veletanlic. Very serious. I don't know the status, if there is a criminal investigation. I do know that I have a voluminous record before me -- some, probably, what, four inches in height? -- that discuss Mr. Veletanlic's efforts to send a bunch of guns somewhere, and the allegation being to shoot a witness, or a potential witness, in this trial. Now you come in here and you say, "We're not prepared to go forward."

Do you think this is a substantial basis for granting your motion, is you're not getting paid anymore? And, "Oh, by the way, my client doesn't like me. Appoint some other lawyer, who's not going to get paid."

MR. VARNI: And if I may explain, Your Honor?

THE COURT: By all means.

MR. VARNI: The basis for the motion was because

Mr. Veletanlic does not want us as counsel. The reason that we included the financial information and the reference to Mr. Levy is because he's been working with Mr. Levy, at this point, in preparation for what he intends to appeal. My intention, by putting that in, Your Honor, was to try and make sure that this didn't get delayed further. So as I filed that financial affidavit, I filed to show that he would qualify, I believe, for appointed counsel, which I believe Mr. Levy is on the board of. I wanted to try and make this process as seamless as possible if this Court was to allow us to withdraw. And the reason I put Mr. Levy in there is because I believe that he is very well read on what's going on in this entire case and the post-conviction allegations. That was my intention.

THE COURT: Your office has been intimately involved in the post-conviction saga. It includes numerous references to Mr. Veletanlic reaching out to your office, to your attorneys, in particular Ms. Scanlan. Mr. Levy has nothing to do with any of that, at least in the record that's before me.

And you're now saying he's intimately informed?

MR. VARNI: I believe he's in the best possible position of any other attorney, besides an attorney from our office, if this Court was to allow us to withdraw. Additionally, Mr. Veletanlic has a good relationship with Mr. Levy, and has further requested that we make that

recommendation to the Court. That was my intention, Your Honor.

But I can tell this Court, from the intimate amount that I have worked on this case, post-conviction, our relationship with Mr. Veletanlic, and his intention, is for us to no longer work on this case. I am making that representation through my client, from my client. We have tried. And unfortunately, I believe our relationship has soured to the point that it will not be productive, going further, and I need to make that record to the Court.

THE COURT: Are you making that record to the Court as a retained, private counsel?

MR. VARNI: Yes, I believe so. I'm not sure I completely understand the question but --

THE COURT: Well, you can be a CJA lawyer. You can be a retained, private counsel.

Which are you?

MR. VARNI: I'm retained.

THE COURT: All right. And so Mr. Veletanlic wants to fire his private lawyer.

MR. VARNI: Yes, Your Honor.

THE COURT: And has he applied for CJA representation?

MR. VARNI: I have filed the financial declaration, Your Honor.

THE COURT: With whom?

MR. VARNI: I filed it with our motion to withdraw. So I was going to be asking the Court to appoint, based upon that.

THE COURT: I don't -- Counsel, have you practiced in this district long? I don't think we've run into each other.

MR. VARNI: I don't believe we've run into each other, Your Honor, no.

THE COURT: Well, have you practiced here long?

MR. VARNI: I have practiced in the Western District, primarily out of Tacoma.

THE COURT: That would explain it. They won't let us go to Tacoma.

MR. VARNI: Well, I go where I'm told to go, Your Honor.

THE COURT: Does the government wish to be heard?

MR. WOODS: Yes, Your Honor.

THE COURT: You can go ahead and sit down, Mr. Varni.

MR. VARNI: Thank you, Your Honor.

MR. WOODS: Your Honor, of course I share the Court's frustration. We're ready to proceed to sentencing. You can see that we put a fair amount of time into our presentation.

With that said, I've had this issue come up in another case. I've briefed it with the Ninth Circuit. And I think in light of what counsel said, I don't think we would survive an

appellate review. At a minimum, the Court, I think, would need to do an ex parte review with counsel to understand if, indeed, the representation that there's this fundamental breakdown has happened. But in light of the record right now, I don't think the Court should proceed to sentencing. I say that with tremendous reluctance, but I don't want to try this twice.

THE COURT: Well, it would be redoing the sentencing. We're not going to redo the trial. The jury has already convicted this gentleman.

MR. WOODS: I misspoke, Your Honor.

THE COURT: You're busy bringing second charges against him, as best I can tell.

When will Mr. Levy be ready to represent Mr. Veletanlic at sentencing, since I have nothing from Mr. Levy that says he's prepared to do this?

MR. VARNI: I cannot answer --

THE COURT: I have no ability to tell the CJA coordinator, "This is the lawyer who I want," which is what you're proposing, sir.

MR. VARNI: I cannot speak for Mr. Levy, Your Honor. I know that my client would like this to be set out approximately three months.

THE COURT: Oh, give me a break.

MR. VARNI: I'm just letting the Court know. I'm not making a specific request, Your Honor, whatsoever. I'm just

advising the Court of my discussions. And I will also tell this Court, I've spoken with Mr. Levy about stepping into sentencing, and he said that he was amenable to doing so. But again, I understand that Your Honor has said we can't specifically --

THE COURT: I believe we have an opening on Thursday morning, Counsel.

Three months? To do what, since he's fully up to speed?

MR. VARNI: Your Honor, I cannot speak for how much time he would need, but he has told me that he is amenable to stepping in.

THE COURT: Not how much time he's amenable to need. I don't know what that means. If your client wants to vacation in the federal detention center for three more months so he can organize another series of gun transactions, that's one thing. But I'm not going to permit it.

MR. VARNI: I understand, Your Honor. I'm making my record. And again, obviously, we're in -- we are in opposition as to what actually happened post-conviction. But that's certainly for another time.

THE COURT: I'm not sure I understand what you just said.

MR. VARNI: The government and myself and Mr. Veletanlic do not agree with everything that's in the post-conviction materials, as is probably clear from our

memorandum.

THE COURT: Well, so, Counsel, what -- you want me to postpone a sentencing in a case that will remove your client from the federal detention center and send him off to prison, probably a medical facility, for three months, in the face of an uncontroverted series of documents from the United States showing that he -- having told the Court that he had no guns, he's telling his gun dealer friend to free up four separate guns, and then ammunition, and an armada of other things, in order to get the address of someone who he has already indicated to the Court betrayed him.

That's your position in this matter; is that correct, Counsel?

MR. VARNI: It is not my position, Your Honor, because that is not how we would characterize those allegations.

However, it is my position that my client would like to fire his private counsel. He has advised me that he wants three months. That's the only record I can make, because that's the basis of my knowledge, Your Honor.

THE COURT: All right. I am removing you and your firm as counsel in this matter. I am going to allow Mr. Levy, if he is appointed by the CJA -- and I make no assurances of that.

MR. VARNI: I understand.

THE COURT: And we will set this for probably the first week in December. Should give everyone plenty of time to respond.

And, Counsel, I think your conduct in this matter is highly questionable. I understand you're zealously representing your client, but your client's managed to make a pretty convincing case that he put the hit out on someone. And now, according to your own pleadings, he's saying -- or his declaration to the Court -- he is so weak of will that two people who he's never met before convinced him to put this hit out on someone they don't know, but he, in this very courtroom, has said did him wrong. That's where we are. That's my record in this matter.

We'll be in recess. And we will arbitrarily set a new date for sentencing, and it will go forward on that date. I'm tired of the gamesmanship. I'm tired of Mr. Veletanlic lying to this Court, which is what he has done over and over and over again. And it's going to stop.

We're in recess.

(Adjourned)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ *Andrea Ramirez*
ANDREA RAMIREZ
COURT REPORTER